## THE STATE *v.* WM. E. BUTLER *et al.*

1. MUNICIPAL CORPORATIONS. *Powers.* The city of Memphis, under the act of 1866, authorizing special assessments for construction of pavements, laid a special tax, which, after it was partly collected, was declared void; under the act of 1873, ch. 67, the city passed an ordinance directing the mayor to take up all receipts for payments of the void tax and issue certificates of indebtedness under the seal of the city instead thereof. The mayor took up a receipt wrongfully obtained by A from B, to whom it was payable, bearing no evidence of assignment, and issued a certificate of indebtedness to A, who sold it to a third party; the city, under a petition by B in a proceeding, instituted under the act of 1879, ch. 92, was ordered to issue another certificate of indebtedness to B.

2. VOID TAX. *Promise to repay.* A municipal corporation is under no *legal* obligation to repay amounts received under a void ordinance and statute, but the *moral* consideration will support a promise of repayment.

3. LIMITATIONS. *Pleadings.* The statute of limitations of six years must be specially pleaded.

### FROM SHELBY.

Appeal from the Chancery Court at Memphis. W W. McDowell, Ch.

W. M. RANDOLPH, MYERS & SREED and M. MERRIWETHER for complainants.

POSTON & POSTON and FINLAY & PETERS for Greenlaw.

COOKE, Sp. J., delivered the opinion of the court.

In 1866 the Legislature passed an act by which it undertook to authorize the city of Memphis to make certain kinds of pavements upon certain streets in that city, and to assess and collect the cost of the same upon the property adjacent or abutting upon said streets.

In pursuance of this supposed authority, said city did contract for and cause to be constructed such pavements upon some of its streets, and assessed taxes to pay for the same upon the property of the citizens fronting upon or adjacent to such pavements, some of the owners of such property as was thus assessed, and among them the testator of petitioners, paid these assessments and took receipts therefor in accordance with the requirements of said city. These payments were made by W. B. Greenlaw, surviving partner of W. B. Greenlaw & Co., during the years 1867 and 1868, aggregating about the sum of $10,000, and receipts taken therefor in his name as such surviving partner.

A large number of the property owners upon said streets thus paved, contested the right of the city to assess and collect taxes upon their propeety in this manner. And in 1872 the act of the Legislature, under which the authority was claimed, was held by this court to be unconstitutional and void: 9 Heis., 349.

The contracts under which these pavements were constructed, however, have been held to be valid obligations of the city to be paid by a general assessment upon all the assessable property within the city.

Soon after this decision, by an act of the Legislature passed March 24, 1873, entitled an act to amend the charters of all the incorporated towns and cities in the State, it was provided that where any incorporated town or city has, by virtue of presumed authority to lay special assessments for specific purposes, levied and collected taxes, or special assessments, the right to make which levy and assessment was afterwards declared void by the Supreme Court of the State, said town or city shall have the power to levy a tax, in addition to all other taxes allowed by law to be levied, sufficient to cover the entire cost of the improvement, with interest thereon, for which said special assessments were illegally made, and in the levying such additional tax, authority is hereby given to such town or city, to allow as valid payments on said additional tax any sum or sums, with interest, paid by persons in satisfaction, or in part satisfaction, of said special assessments illegally levied and collected as aforesaid: Acts 1873, ch. 67, page 102.

In pursuance of the authority conferred by this act, the city of Memphis, on June 25, 1873, passed an ordinance which contained the following provisions: "The mayor is hereby authorized and required to issue to each and every firm or corporation holding the receipts of the contractors or of the city, for the payments actually made upon bills or accounts certified

to be correct by the city engineer for account of the paving of the streets and alleys of the city, with the Nicholson or stone paving under the provisions of the city charter or ordinances of the city, charging the costs of such payments upon the property in front of which the pavement was laid down, which provisions of the charter or ordinances have been held by the Supreme Court of Tennessee to be unconstitutional and void; a certificate of indebtedness under the seal of the city and countersigned by the register for the amount of money actually paid upon such receipts with interest thereon at the rate of six per cent from the date of payment until the time said certificate may be redeemed by the city. And upon issuing the certificate of indebtedness, the mayor shall take up the receipt on account of which the certificate is issued, and shall cause it to be cancelled and filed as a voucher, in the office of the Comptroller." It was also further provided that such certificates should be received at their face value in payment of the tax levied to pay the costs of the paving.

The property upon which these payments in question of illegal taxes were made, was partnership property belonging to the firm of W. B. Greenlaw & Co., which was composed of W. B. Greenlaw and J. O. Greenlaw. J. O. Greenlaw had died in 1864, and these taxes were paid by W. B. Greenlaw as surviving partner of said firm of W. B. Greenlaw & Co., and the receipts taken in his name as such surviving partner of said firm. Said J. O. Greenlaw died testate, his will was proven and recorded in Shelby county,

and the surviving partner, W. B. Greenlaw, was also appointed and qualified as his sole executor. In 1868 said W. B. Greenlaw, as such executor and surviving partner, filed a bill in the chancery court at Memphis, to settle the copartnership of W. B. Greenlaw & Co. An account was ordered in said cause, which was taken on the 17th of February, 1869. Upon the taking of said account, W. B. Greenlaw produced said receipts before the commissioner by whom said account was taken, as evidence of payments made by him on account of the partnership, who allowed the same to him as credits, and referred to said receipts in his report as vouchers, and deposited the same (as the agreed state of facts shows), along with said report on said 17th of February, 1869, but said receipts had no endorsement put upon them showing they had been filed in said suit.

On the 21st day of July, 1873, one William B. Greenlaw, Jr., who was the son of J. O. Greenlaw, deceased, and nephew of W. B. Greenlaw, the surviving partner of said firm of W. B. Greenlaw & Co., produced to the mayor in his office, the said original receipts and demanded the issuance of certificates of indebtedness thereon as provided by said city ordinance, and the mayor thereupon issued certificates of indebtedness of the city therefor to William B. Greenlaw, Jr., or order, who surrendered said receipts to the mayor, and they were cancelled and filed in the mayor's office.

The father of said William B. Greenlaw, Jr., had then been dead for many years, and his will had been

admitted to probate and registered in Shelby county, by the terms of which said William B. Greenlaw, Jr., had no interest whatever in his estate. The officers of said city of Memphis, when they received said receipts and issued said certificates of indebtedness, had no notice, except such as said receipts themselves gave them, that the receipts did not belong to said William B. Greenlaw, Jr., or that he was receiving them without right, or that he had been guilty of or was contemplating any breach of duty or good faith with reference to the said receipts or the money they entitled the owners thereof to, or the said certificates. It is not shown by what means said William B. Greenlaw, Jr., obtained said receipts, but the inference is very manifest that he fraudulently abstracted them from the clerk and master's office where they had been deposited. He sold or disposed of said certificates of indebtedness so issued to him and the city has either paid them or is liable for them in the hands of innocent holders. He was and is totally insolvent.

William B. Greenlaw, the surviving partner of Wm. B. Greenlaw & Co., and executor of J. O. Greenlaw, deceased, died in 1875 testate, and W. E. Greenlaw was duly appointed and qualified as his executor and D. H. Poston was appointed administrator *de bonis non*, with the will annexed of J. O. Greenlaw, deceased.

On the 7th of January, 1878, they as such executor and administrator *de bonis non*, having demanded of the mayor of the city of Memphis, the issuance to them of certificates of indebtedness as such repre-

sentatives of said J. O. and W. B. Greenlaw, deceased, upon said receipts, and having been refused, filed a petition for *mandamus* in the circuit court of Shelby county, against said city of Memphis and the mayor thereof, seeking to compel the issuance of the same to them under the provisions of said ordinance.

Pending this proceeding, the Legislature in 1879 repealed the charter of the city of Memphis, and established what is termed the Taxing District of Memphis, by which action a different organization was established and the office of mayor of said city abolished.

The corporation of the city of Memphis was abolished by the Legislature January 31, 1879. The bill under which the Taxing District was established was passed the same day, and on the 14th of March, 1879, an act was passed for the purpose, among other things, to collect and dispose of the taxes and make settlement of the debts of corporations whose charters had been repealed. By the 4th section of said act, the receiver and back-tax collector was authorized to file a general creditor's bill in the name of the State, in behalf of all creditors against all delinquent tax-payers, etc. All pending suits were to be revived in the name of the State and consolidated with the general proceedings therein provided for, and when so consolidated to form part of said general proceeding. It is further provided that the court in which said proceeding may be instituted, shall have power to settle and adjust all equities, * - * and to give all relief, both to defendants and the creditors that might be given, if there were as many separate suits as there are creditors and delin-

quent tax-payers. The chancery court, in the exer-cise of the jurisdiction conferred by this act, shall have all the powers possessed by such courts, in the administration of the estates of insolvent natural or corporate persons: Acts of 1879, ch. 92, sec. 4.

By section 10 of said act it is further provided that publication shall make all creditors parties, with the right to relief as fully as if especially named, * * and that if any creditor, or the receiver and back tax collector, shall desire to contest the validity, in whole or in part, of any claim filed in common form, he may do so in a summary way in the progress of the cause, and the opposing parties in such contest shall reduce the facts to writing that are necessary to its determination, and file the same, and, when filed, they shall become part of the record, etc.; and when either party is dissatisfied with the decision of any litigated question, he may have such question re-heard upon appeal, etc.

The bill provided for by this act was soon thereafter filed in the chancery court at Memphis, by the style of the State *v.* W. E. Butler. *et al.*, where it is still pending. On the 9th day of July, 1881, the complainants in this proceeding filed their petition in said cause against the city of Memphis, or Taxing District, by which they fully and *in extenso* alleged all the above recited facts, and averred that by reason of the procurement by the city of Memphis of the repeal of its charter, and abolition of the office of mayor and change in the local government of said district, the remedy sought by their said suit

by *mandamus* proceedings had been rendered and become inappropriate and impossible as a mode of relief adapted to their case, and that a court of equity could alone afford them adequate relief, and praying for such appropriate relief as their case entitles them to.

An agreed state of facts was made up by the parties, and filed in the record, but no answer or other defense to said petition appears to have been made in writing or filed in the case.

Upon the hearing of the matters of said petition, the chancellor was of opinion that the petitioners' claim was barred by the statute of limitations, and dismissed the petition, and complainants have appealed.

For the defense it is now insisted that the mayor of the city of Memphis was authorized to issue the certificates of indebtedness to Wm. B. Greenlaw, Jr., upon the presentation by him of said receipts, and demand for the issuance of the same, he having the receipts in his possession, and the city authorities having no notice of any fraud on his part in regard to them, except such as they could derive from the face of the receipts.

It is a sufficient answer to this to say that the ordinance above cited authorized the issuance of the certificates of indebtedness to the holder of the receipts, upon their presentation, etc. The record leaves no doubt but that William B. Greenlaw, Jr., surreptitiously obtained the receipts from the office of the clerk and master, and that he was neither the

legal owner or holder of the same. The receipts upon their face showed that they were executed to W. B. Greenlaw, surviving partner of W. B. Greenlaw & Co.; they contained no evidences of any transfer by the original holder; they were not negotiable; and the fact that they were presented by a wholly different person, without any show of right or authority, except the possession of them, was a circumstance sufficient to put the mayor and city authorities upon inquiry as to his right to demand the issuance of said certificates of indebtedness in his own name, and the issuing of them to him was unauthorized.

But it insisted that if this be so, it was an unauthorized act on the part of the mayor, for which the city could not be held responsible. This cannot be maintained for two reasons—first, because it was made his duty by the city ordinance to take up the receipts and issue certificates of indebtedness for them; and his negligence in issuing them to the party not entitled to them was a wrongful act within the scope of his authority for which the city is liable; and second, because the wrongful issuance of certificates of indebtedness upon said receipts, and the unauthorized cancellation of them did not divest the true owner and holder of this right to have certificates of indebtedness issued to themselves upon them, notwithstanding the previous illegal issuance of others to William B. Greenlaw, Jr. The receipts, then, being wrongfully in the possession of the city, it was the duty of the mayor and city authorities to issue

certificates of indebtedness upon said receipts to the complainants upon their demand, and his wrongfully refusing to do so gave the complainants a right to compel their issuance by *mandamus*.

It is again insisted for the defense, that, as no right of action against the city accrued by reason of the payment in the first instance of said illegally assessed taxes, hence there can be no right of recovery now existing for the same. Notwithstanding the voluntary payment of taxes illegally assessed does not constitute or confer a right of action to recover them back, yet it did create a moral obligation on the part of the city to repay them, and was a sufficient consideration to support a subsequent promise to do so. And this promise was made by the ordinance of the 25th of June, 1873, and the city became bound by this recognition and promise to pay this indebtedness evidenced by these receipts, as was decided by this court in the case of *Lea* v. *City of Memphis*, 9 Baxt., 109.

The defense mainly relied upon, however, is the statute of limitations, as this was the ground upon which the chancellor based his decree dismissing the petition. The statute of limitations, to be available, must be pleaded: *Merriman* v. *Cannovan*, 9 Baxt., 97; 1 Heis., 701; 10 Yer., 119; and it would, perhaps, be sufficient to say that in this case the statute is not pleaded, nor in any manner relied upon, either by answer, plea or exceptions, and could not be assigned as a defense merely by way of argument, no particular statute being anywhere pointed out or re-

lied upon in the record as a defense. But if this were not so, the suit by *mandamus,* which at the time was an adequate and appropriate mode of redress, was instituted within six years next after the passage of the ordinance by which the city recognized and promised to pay this indebtedness, as above shown, and the defendant by its own action, changed its organization in such manner as to render the mode of redress which had been resorted to inappropriate and unavailing to the petitioners, and in such a case the inherent powers of a court of equity would authorize it to afford relief. Besides, this was not an abandonment of the suit at law, but the invocation of the aid of a court of equity to afford appropriate relief, which, by the act of the defendant, had been rendered impossible in the suit which had been instituted, and was not an abandonment of the litigation, but a continuance of it, as above stated, by resorting to the only mode by which it could then be made available. Besides, by the legislation above referred to, all creditors were required to file their claims in the general suit for settling the affairs of the city, to be litigated under the general proceeding in that case. And the terms of said act itself was a transfer of the litigation in that suit to the general creditors' bill provided for and instituted under it, and in accordance with which this petition was filed in said cause. Under the facts of this case the statute of limitations, if pleaded, could not constitute a defense in a court of equity.

The chancellor's decree dismissing the petition was

therefore erroneous, and will be reversed, and a decree entered in favor of the petitioners for the amount of the taxes paid as shown by the face of said receipts, with interest from the date of the same, which will be paid in the same manner as other holders of like receipts have been or are entitled to be paid, out of the funds set apart for that purpose.